FILED
2010 Jul-28  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CATHY M. SKELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-1677-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Cathy M. Skelton, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability Insurance Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

  (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition)

and third (reasonably expected to cause pain alleged) parts of the <u>Hand</u> standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  See 20 CFR §§ 404.1529 and 416.929;  <u>Hale</u> at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  <u>Foote</u> at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

<u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in

significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the

articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff in this case was 58 years old at the time of ALJ Randall Stout's decision. She claims disability from October 30, 2006, with a date of last insured of December 31, 2007. ALJ Stout found she had the following severe impairments:

> status post bilateral ankle fractures, status post right radial artery and median and ulnar nerve repair, now back pain of undetermined etiology, and status post left wrist fracture. The claimant's anxiety and depression are determined to be non-severe impairments . . . .

[R. 14].

The record shows that the plaintiff was treated by osteopath Jeffrey W. Long, D.O., from July 31, 2006, to April 3, 2008. On August 30, 2007, Dr. Long diagnosed high blood pressure, back pain, degenerative joint disease, insomnia and anxiety. [R. 192.]. On December 12, 2007, plaintiff complained of anxiety and insomnia,

and Dr. Long prescribed Wellbutrin and Ambien. [R. 191.]. On January 13, 2008, she was seen for bronchitis, cough, laryngitis and sinus drainage, but Dr. Long reported other physical findings as normal. [R. 190]. On April 3, 2008, she complained of anxiety and wanted refills. He reported the physical exam as essentially normal [R. 189]. Dr. Long prescribed Voltaren (used to treat pain or inflammation caused by arthritis or ankylosing spondylitis), Ambien and Ativan (an anti-anxiety drug). [Id.].

On September 16, 2008, Dr. Long completed a Clinical Assessment of Pain form where he found:

- Pain is present to such an extent as to negatively affect adequate performance of daily activities or work

- Physical activity would result in an increase of pain to such an extent that bed rest and/or medication is necessary

- Her medical condition would cause absences of more than four times a month on average

- Prescribed medication would cause some limitations but not to such a degree as to create serious problems in most instances

- Her objectively determined medical condition could reasonably be expected to produce the pain she complains of

- She has experienced this level of pain since 1998

[R. 207-208]. Additionally, Dr. Long completed a Clinical Assessment of Fatigue/Weakness, where he found:

- Fatigue/weakness is present and found to be virtually incapacitating to her

- Physical activity would increase her fatigue/weakness to such an extent that bed rest and/or medication is necessary

- Prescribed medication would create some side effects but not to such a degree as to create serious problems in most instances

- She does have an underlying condition that can reasonably be expected to produce the fatigue/weakness she experiences

[R. 209]. Finally, Dr. Long completed a Functional Assessment where he thought the plaintiff could stand for 30 minutes at a time for a total of one to two hours per day, walk for 15 to 30 minutes at a time for one to two hours a day, and sit for one to two hours at a time for a total of four to five hours a day. [R. 210]. He limited her to lifting and carrying zero to two pounds frequently, and two to five pounds occasionally. [Id.]

The ALJ stated "the submitted forms, if true to the medical record that supports these conclusion, present a person that is totally incapacitated by her impairments. However, in this case the shoe does not fit the foot." [R. 17]. The ALJ continued:

> The undersigned rejects the opinion of Dr. Long. While Dr. Long is one of the claimant's treating physicians, his assessment, especially his opinion regarding that the claimant's mental problems have existed since 1998. [sic] The undersigned finds that Dr. Long's treatment records do not go back to that time as they only begin in July 2006 and this opinion is inconsistent with his own treatment records and findings as well as the findings and opinions of other examining and treating sources, including Drs. Vague and Woodfin. Great weight has been given to the opinion of Dr. Woodfin. Even though Dr. Woodfin only saw the claimant on one occasion and he did not treat the claimant, his opinion is based upon a thorough evaluation and test results and it is consistent with the medical evidence of record.

[R. 20]. The ALJ went on to find that the plaintiff has the residual functional capacity to perform medium[1] work with some restrictions, and found that she was capable of performing her past relevant work as a school bus driver. [Id.].

M. Clarke Woodfin, Jr., M.D., performed a consulting physical examination at the behest of the Commissioner on May 21, 2007. He summarized the plaintiff's history:

> Problem #1: Ankles. Right ankle was fractured in 1965 in MVA. Had closed reduction; no surgery to the right ankle ever.
>
> Left ankle was cut in the above MVA. Fractured the left ankle in 1973, compound fracture, ORIF. Hardware was removed later. Had a second surgery ten years ago "to scrape calcium." Also had trauma to the left ankle when the heel was "almost ripped off by a bicycle wheel." Another fracture occurred in the area of the left lateral metatarsals in 1988, cast only.
>
> Because of the ankles she can't be on her feet longer than 30 minutes, can walk one-fourth of a mile. Can't walk on uneven surfaces because "my left ankle turns real easy." "That's it" regarding physical limitations and the ankles. Last orthopedic care was two years ago.
>
> Problem #2: Back. Low back was fractured in the 1965 MVA. No surgery ever and she was not put in traction. Says she has never seen "a back doctor." No MRI or CT ever. Points to the lower lumbar area as the area of complaint with occasional pain down to the left knee. Can't sit longer than 30 minutes, can't lift and carry more than 20 lbs.

---

[1] The VE testified that the plaintiff's past relevant work as a school bus driver was "light, semi-skilled, 913-463.010." He did not elaborate as to whether the plaintiff actually performed the job at light, but the ALJ's hypothetical question assumed a range of medium work. [R. 41, 42].

> Problem #3:  Right Hand/Arm.  Severe laceration just distal to the elbow in 2007.  Doesn't recall the doctor's name in Birmingham.  The hand is numb and she has difficulty picking up small objects.
>
> Problem #4:  Left Hand.  Left wrist was fractured on 11/30/2006; fracture was compound.  Had external fixation.  No other surgery to the area.  Because of the left hand there is limited lifting and the wrist is painful with ROM loss.  "I can't lift much with it."  No other physical limitations are stated.

[R. 157].  His physical examination for her general appearance showed:

> Sat 20 minutes for the history without getting up and moving around.  Equivocally acts like someone with low back pain.  Erect gait with a hint of limp favoring ?which [sic] lower extremity; no spasticity or ataxia.  Specifically, no assistive device was brought.  Arises from sitting and sits down in a normal fashion at normal speed.  Moves about the room without apparent physical limitation, gets on examining table with ease.  On the table the claimant goes from sitting to supine to sitting by contracting the abdominal musculature, not by turning to one side to let herself up or down with the arms as someone with a bad back problem might do.

[R. 158].  His examination of musculoskeletal systems and extremities revealed:

> Stands well on either leg alone.  Toe and heel walking, tandem walking are done poorly.  Goes to a one-half squat and arises, going no farther because of loss of ROM in the left ankle and low back pain. Upper extremities and lower extremities are unremarkable to inspection and palpation except for (1) old severe trauma to the soft tissue at the right elbow, and (2) definite bony enlargement in the right lateral malleolus and a 360-deg. bony enlargement at the left ankle.  No cyanosis, clubbing, edema, stasis or varicosity.  Faint dorsalis pedis and posterior tibial pulses on the right; fair dorsalis pedis and posterior tibial pulses on the left.
>
> ROM of the shoulders is full without apparent discomfort, as it is in the rest of the upper extremities except for only 30 degs. dorsiflexion and 50 degs. plantar flexion at the left wrist, with a 50% loss of radial and ulnar movement.

> ROM of the hips and knees is full.  Right ankle demonstrates zero degs. dorsiflexion, 20 degs. plantar flexion, 5 degs. external and internal rotation. Left ankle is totally fused in the neutral anatomic position but is also in about 20 degs. of valgus.

[R. 159].  Dr. Woodfin's examination of the plaintiff's spine showed:

> 80 degs. flexion, 10 degs. extension, 25 degs. tilt or turn right or left. Sitting SLR is negative at 90 degs. bilaterally.  Supine SLR is positive at 70 degs. bilaterally for slight low back pain, but I had to ask.  Spine is straight without deformity or tenderness.  There is a 1+ paraspinal spasm on the right.  No sensory loss to touch in the lower extremities.

[Id.].  Finally, his neurological examination showed:

> Romberg is negative, sensorium is clear, she hears well, speech is unremarkable.  Motor strength is 5/5 in the shoulder girdles, biceps, triceps, wrist flexors, pinch, grip, quadriceps, hamstrings and right ankle flexors, without apparent discomfort anywhere.  No movement is found in the left ankle.  DRT's are 0 to 1+ and symmetrical.  Claimant says the right upper extremity from the elbow distally is numb to touch for 360 degs.  CN's II-XII are intact; manual dexterity is <u>normal</u> on opposing thumbs to fingertips.

[Id.](emphasis in original)  Dr. Woodfin's conclusion was as follows:

> Speech and hearing, travel and dexterity are unaffected.  Lifting and carrying, sitting, being on her feet, and walking are per her admission.  This would seem to be an avoidance-type back; e.g., if she avoids frequent bending and heavy lifting she should get along fairly well.

[R. 160].

Additionally, the record contains an x-ray of the lumbar spine that was taken May 21, 2007.  That film showed:

> Minimal L4-5 spondylolisthesis may be degenerative.  Mild rotatory scoliosis.  Mild diffuse discogenic and fact degenerative joint disease. There is a normal variant of segmentation involving the L5-S1 level with associated degenerative changes, greater on the left.

[R. 161].

      The reasons given by the ALJ for rejecting the opinion of treating osteopath Dr. Long are not supported by substantial evidence.  Dr. Long's testimony regarding the plaintiff's pain and fatigue, and the effects they would have on her ability to function, are based upon his clinical judgment.  He does not state that his findings were based on the plaintiff's subjective complaints.  See Hale v. Bowen, 831 F.2d 1007, 1012 n. 7 (11th Cir. 1987)(noting that the opinions contained on a PCE form, which instructed the physician to base his opinions on his clinical findings, should be assumed to be the doctor's own professional assessment ).  The ALJ had the opportunity to elicit additional medical evidence as to whether the plaintiff suffered from an objective medical condition that could reasonably give rise to disabling pain, but chose not to do so.  See  Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990)(noting the ALJ improperly analyzed the medical evidence himself rather than eliciting additional medical testimony from physicians).  Therefore, Dr. Long's testimony must be taken as true.

      Additionally, the ALJ improperly discredited the plaintiff's pain testimony:

> At the time the claimant completed a Daily Activities Questionnaire, she admitted she was able to take care of her personal needs such as bathing, grooming, and dressing on a regular basis without any assistance.  The claimant indicated she shopped for her personal needs once a week, and she performed household chores such as cleaning and doing the laundry.  The claimant indicated she spent her spare time reading and watching television and she visited with her family and friends every other day.  At the hearing, the claimant admitted she continues to be able to drive an automobile and go shopping.  There is nothing in the record to indicate that the claimant's impairments posed significant limitations on her ability to perform work activities.

[R. 19-20]. The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ."  867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

At the ALJ hearing, the plaintiff testified that in the mornings her pain level is an eight on a scale of one to 10.  [R. 37].  She also testified that she has to lie down during the day and elevate her feet to alleviate swelling.  [Id.]. In her Physical Activities Questionnaire, the plaintiff stated that "bath morning takes long time," "clean kitchen takes a while," "watch T.V. some cleaning of house."  [R. 89]. In completing routine or familiar tasks, she said, "takes longer than it use[d] to. everything."  [Id.].  She stated that as for personal care, it "takes longer" because of "pain & swelling."  [R. 90].  "When I shop for groceries I don't buy very much at a time – takes long time to get in house."  [R. 92].  Additionally, her sister completed a Daily Activities Questionnaire, and stated that "It takes 3-4 hrs to groom, dress & clean, etc."  [R. 86].  Her sister continued, "She can't walk good because of her ankles & feet problems, and her hands and arms are so

15

disfigured and she doesn't have feelings in her hands." [R. 88].  In his decision, the ALJ does not address the plaintiff's sister's lay testimony regarding her abilities.  The sister's testimony stands as not discredited.

In order to find the plaintiff not disabled, the ALJ found she was capable of doing medium work[2].  The court notes that this plaintiff, as a person of advanced age, would meet the Medical Vocational Guidelines at the sedentary level of exertion, and at the light level of exertion if her skills were not transferrable.  At the hearing, the ALJ examined the vocational expert:

> Q: Now I'd like you to further assume that the individual would be experiencing pain and discomfort to such an extent that it would affect her ability to engage in the jobs requiring concentration, persistence, and pace, for periods of up to two consecutive hours.  In other words, she – her ability to concentrate, and persists with less than two consecutive hours, what effect would that have on prior work as a school bus driver, these jobs as hand packager, sandwich maker, and kitchen helper, and basically, the wide-world of unskilled work?
>
> A: If her ability to sustain concentration were less than two hour intervals that would preclude any jobs.
>
> Q: Okay, if she had to take frequent work breaks beyond those scheduled for unskilled work, and that this would be a chronic problem, what effect would that have?
>
> A: That would preclude any jobs.
>
> Q: If she had to take – or other [sic] if she had to miss work, as a result of illnesses, or physical impairments, and this – and that the rate

---

[2] The Commissioner's regulations define medium work as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

        would be two or more on a monthly basis, what effect would that have?

A:      That would also preclude any jobs.

Q:      If she had to frequently elevate her lower extremities, and would that, in effect, in other words, during the course of a working day, she'd have to do this beyond normally scheduled work breaks, what effect would that have?

A:      If she had to elevate it waist level or above, that would preclude any jobs.

[R. 43-44]. Taking the testimony of the plaintiff, the plaintiff's treating physician and the plaintiff's sister as true, the plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 28 July 2010.

                                          UNITED STATES DISTRICT JUDGE
                                                  J. FOY GUIN, JR.